UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :
               :
 v.            :
               :  Cr. No.   99-0389-01 (RWR)
RAFAEL MEJIA,       :
               :
   Defendant.     :

**GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION
FOR RELIEF PURSUANT TO 28 U.S.C. § 2255**

The United States respectfully submits this response to Defendant Mejia's ("Mejia")

motion under 28 U.S.C. § 2255 alleging ineffective assistance of counsel.  Mejia seeks habeas

relief on five grounds, all based on his claim that his trial counsel provided ineffective assistance.

In short, Mejia's claims are vague, conclusory, and factually inaccurate.   The alleged errors were

not so serious that counsel was not functioning as "counsel" guaranteed by the Sixth

Amendment.   Furthermore, none of the allegations show that, but for t his attorney's alleged

unprofessional errors, the outcome of the results of the trial would be different.    For these

reasons, Mejia's motion should be summarily denied without an evidentiary hearing.

## I.   FACTUAL BACKGROUND

### A.   EVIDENCE AT TRIAL

On November 21, 2001, after a five-week trial, a jury convicted Mejia and a co-

conspirator of one count of Conspiracy to Distribute Five Kilograms or More of Cocaine for the

Purpose of Unlawful Importation Into the United States, in violation of 21 U.S.C. §§ 959(a),

960(a)(3), 960(b)(1)(B)(ii) and 963.   At trial, the Government presented overwhelming evidence that established Mejia as the leader of a criminal organization which transported large quantities of cocaine from Central America to Mexico, for ultimate sale in the United States.

## 1.   Intercepted Conversations

At trial, the Government produced the Costa Rican wiretap conversations, which were analyzed by Sigifredo Sanchez, an inspector in the Costa Rican police department.   Inspector Sanchez, who is qualified as an expert witness with respect to drug codes, testified concerning the scope and operation of the investigation.   Sanchez explained that, in addition to Mejia,[1] the investigation identified other members of the conspiracy, including Johnny Morales Cooper and Freddy Davila.

Three Government witnesses identified Mejia's voice on these tapes: Inspector Sanchez, Special Agent Evans, and cooperating witness Juan Delgado.   The Government offered a series of telephone conversations, the first of which occurred on August 11, 1998, to establish defendant's supervisory role in the criminal organization.   In one conversation, Mejia ordered Johnny Morales Cooper to send an entire shipment of drugs to a person identified as "Juan."   In a subsequent conversation, Mejia called to ask why the load of drugs that had been delivered was short by three kilograms.   Morales Cooper explained that "Ramiro" authorized him to hold back three kilograms of cocaine and that "144" were sent.[2]

The recorded conversations disclosed a nexus between the conspiracy and the seizure of three cocaine drug loads in October 1998: (1) 200 kilograms on October 3, 1998; (2) 130 kilograms on October 14, 1998; and (3) 25 kilograms on October 18, 1998.

---

[1] On these tapes, Mejia is sometimes identified by his nickname "Memo."
[2] Inspector Sanchez testified that these conversations referred to the transfer of 147 kilograms of cocaine.

On October 2, 1998, Costa Rican police intercepted a telephone conversation during which Johnny Morales Cooper tells another member of the conspiracy that he is sending $200 with Juanita. Inspector Sanchez explained to the jury that the $200 referred to 200 kilograms of cocaine. Evidence introduced at trial established that Costa Rican officials seized 200 kilograms of cocaine from a tractor trailer at the border between Nicaragua and Costa Rica.

Similarly, in an intercepted telephone conversation, Morales Cooper, Nelson Barrios, and another conspirator discuss the number "130," which Inspector Sanchez explained referred to the number of kilograms of cocaine hidden in Barrios' trailer.  On October 14, 1998, Nicaraguan police stopped a tractor trailer driven by Nelson Barrios at the Nicaraguan-Honduran border and seized approximately130 kilograms of cocaine on October 14, 1998.

As a result of information obtained from the wiretap, Costa Rican police also stopped a tractor trailer at Peñas Blancas, Costa Rica on October 18, 1998 and seized twenty-five kilograms of cocaine.

To provide context for these intercepted conversations, the Government presented Michael Garland, a former DEA agent, whom the court found to be an expert in, *inter alia*, international drug trafficking routes, the methods of communications used by drug trafficking organizations, and the relative price of cocaine in South America and the United States during 1998.  Garland testified that the factors relevant to determining the destination of drugs intercepted in Central America include the quantity of drugs, any markings on the packaging, and the method of concealment.  Garland also explained that drug traffickers frequently speak in code in order to avoid detection by law enforcement and that they would not discuss their drug activities with persons who were not members of their criminal organization.  Finally, Garland

testified that, even though drug trafficking organizations operating in Central America do not always transport their loads to the final destination, they would know the country of destination.

### 2.     Confessions

The Government introduced admissions made by Mejia establishing his membership in the conspiracy.  Special Agent Joseph Evans testified that, after waiving his *Miranda* rights, Mejia admitted his role in an international drug transportation organization.    Mejia acknowledged his involvement with Freddy Davila and Johnny Morales Cooper in shipping drugs through Central America.   Mejia also admitted having a discussion with Johnny Morales Cooper concerning a discrepancy in a 147-kilogram shipment of cocaine.

### 3.     Testimony of Cooperating Witnesses

The Government presented testimony from three cooperating witnesses concerning Mejia's involvement in the charged drug trafficking conspiracy and his connections to the United States.  First, Jorge Alexis Gallardo Funez testified that he had been involved in a number of drug trafficking ventures with Mejia starting in 1996.   Funez testified that, in 1996, Mejia told him that he was going to be transporting 100 kilograms of cocaine to Los Angeles, California, for sale.

Second, Jose Sanchez testified that, starting in 1996, he had been sent to the United States by Mejia on three separate occasions to pick up money totaling approximately $800,000. Sanchez also testified that Mejia used several different aliases, including Luis Alvarez Rios.

Jose Sanchez further testified that Mejia had admitted he was shipping cocaine to "California, to Houston, Texas, and to the Towers in New York."   According to Jose Sanchez,

Mejia also discussed the relative prices of cocaine in the United States during the period of the conspiracy.

Finally, Juan Delgado, Mejia's cellmate at the D.C. jail for more than nine months, testified that Mejia admitted that "they used to bring it [the cocaine], took it, from Colombia and Central America and then to Mexico, and then other people take it to the United States."

### B.   SENTENCING AND APPEAL

Based upon this evidence, Mejia was found guilty.  The Court made several factual findings at the original sentencing hearing in this case. First, it concluded that the amount of cocaine trafficked by Mejia during the conspiracy was far in excess of 150 kilograms. The Court also found that there was "clear and convincing" evidence that the defendant was the "leader" of a criminal organization involving five or more participants. The Court rejected the defendant's requests for a downward departure. Based upon these conclusions, the Court determined that defendant Mejia's Base Offense Level was 42, which authorized a sentence of between 360 months and life. The defendant was thereafter remanded to the custody of the United States Bureau of Prisons for a term of 400 months.

On June 2, 2006, the United States Court of Appeals for the District of Columbia Circuit issued a 23-page opinion which unanimously affirmed Mejia's conviction. The Court of Appeals rejected a number of claims by the defense, including, *inter alia*, that the Court erred by permitting Funez and Sanchez to testify about drug shipments made by Mejia in 1996 and 1997. In particular, the Court of Appeals noted that, because the Government had returned a superseding indictment which expanded the time frame of the conspiracy back to 1995, the testimony from the cooperating witnesses did not constitute other crimes evidence, but rather

"evidence of this crime–the crime with which the defendants were charged." *United States v. Mejia*, 448 F.3d 436 (2006).  The Court of Appeals, however, remanded the case back to the sentencing court because Mejia had preserved a challenge to the constitutionality of the federal sentencing guidelines. *Id*. at 452-53. The Court of Appeals specifically identified the mandatory application of drug quantity and role in the offense as error under the Supreme Court's subsequent decision in *United States v. Booker,* 543 U.S. 220 (2005).  Thereafter, Mejia was re-sentenced on May, 4, 2011, to a term of imprisonment of 204 months.

On February 16, 2012, Ms. Shaner filed a Motion For Enlargement Of Time To File Petition Pursuant To §2255 [3]. Leave to file was granted and Mejia filed the Motion For Ineffective Assistance of Counsel Under §2255 on October 4, 2012 and an addendum on December 5, 2012.

C.    **Habeas Relief**

On a *pro se* basis, Mejia now claims that his counsel, Heather Shaner, ineffectively assisted him during the proceedings.   In a somewhat confusing and conclusionary motion, Mejia points to numerous alleged facts in support of these claims, allegations ranging from inexperience of counsel, failure to interview and call witnesses, failure to make proper objections, to failure to inform Mejia of an alleged plea offer.

D.    **Second Counsel**

It is significant to note that during pre-trial, trial and appeal proceedings Mejia was represented by two attorneys: Heather Shaner and Joseph Virgilio. Despite the defendant's allegation that his motion for ineffective assistance of counsel does not attack Mr. Virgilio,

---

[3] Docket Entry 435.

the presence of a second counsel on its face undermines any allegations that the defendant makes

against his representation at trial. In order to assess a claim of ineffective assistance of counsel,

courts do not isolate the behavior of one member of a defendant's defense team, but rather take

the performance of all counsel together.  *Stitt v. United States*, 369 F. Supp. 2d 679, 689 (2005)

See*, e.g., United States v. Alexander,* 789 F.2d 1046, 1051 (1986); *Soering v. Deeds,* 217 F.3d

840, 2000 WL 870490, at 5 (2000).

## II. ANALYSIS

### A.   <u>Applicable Legal Principles</u>

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate

that: (1) his counsel was deficient for "[making] errors so serious that counsel was not

functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) he was prejudiced by

his counsel's deficient performance because the errors were so serious that the defendant did not

receive a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To establish the first

*Strickland* prong, the defendant "must identify the acts or omissions of counsel" that were

unreasonable.  *Id.* at 690.   To establish the second *Strickland* prong of actual prejudice, the

defendant must "*at least* demonstrate that there is a reasonable probability that, but for [the

errors], the result of the proceeding would have been different…"   *United States v. Pettigrew*,

346 F.3d 1139, 1144 (2003). "Failure to make the required showing of either [part of the two-part

test] defeats the ineffectiveness claim." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As

such, the reviewing court need not "address both components of the inquiry if the defendant

makes an insufficient showing on one." *Id.* at 697.

Attorneys are presumed to be competent.   *United States v. Cronic*, 466 U.S. 648, 658

(1984).   In *Strickland*, the Supreme Court instructed that "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689

(1984).   Courts may not "second-guess counsel's assistance after conviction or adverse

sentence." *Id.*   Thus, "[w]hen counsel's error was motivated by a 'reasonable' strategic

decision; the error does not amount to deficient performance, let alone ineffective assistance of

counsel, under *Strickland*."   *United States v. Ramsey*, 323 F. Supp. 2d 27 (2004). "[A]n

appellant must present factual allegations that, if true, would establish a violation of his [S]ixth

[A]mendment right to counsel."   *United States v. Mohammed*, 693 F.3d 192, 202 (2012).

### A.      Mejia's Allegations Cannot and Do Not Demonstrate that the Trial Would Have Resulted in His Acquittal

Rather than begin with each of the defendant's allegations, the Government need not

address them if the defendant cannot meet the threshold of showing that any prejudice caused on

him by the alleged ineffective assistance of counsel would have outweighed the overwhelming

evidence presented against him at trial. In the present case, it is clear he cannot meet this

threshold. The *Strickland* court noted that it should be "easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should

be followed." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). In this case, Mejia's

ineffective assistance claims should be summarily dismissed because he cannot establish, as he

must, that any of his counsel's alleged errors "prejudiced" him within the meaning of *Strickland*.

As set forth previously in great detail, the Government introduced what can only be fairly characterized as substantial evidence of Mejia's guilt.   Mejia was indicted, prosecuted, and convicted largely based on information stemming from a wiretap conducted by the Costa Rican Police Department during the summer and fall of 1998.   The Government played 26 tapes containing recorded conversations intercepted during the course of a judicially-authorized Costa Rican wiretap investigation.   Eight of those conversations were between Mejia and other members of the drug trafficking conspiracy.

The wiretap disclosed an international drug trafficking conspiracy based in Central America whose goal was the importation of cocaine into the United States and established Mejia as a leader in the organization.   Moreover, the testimony of cooperating witnesses and members of the conspiracy identified Mejia on tape, including recordings in which Mejia directed subordinates to send shipments of drugs, three shipments totaling 355 kilograms which were intercepted by law enforcement.   These witnesses confirmed Mejia was involved in transporting thousands of kilograms of cocaine to the United States and laundering millions of dollars in drug proceeds that were generated in the United States.   Mejia's own confession to law enforcement and to his cellmate in D.C. in which he admitted membership in the conspiracy and with his co-conspirators, further proved his guilt.

Nonetheless, Mejia seeks reversal of his conviction making allegations, among others, that his counsel was inexperienced, did not appreciate the complexity of possible defenses, did not find witnesses who could testimony in his favor, did not properly refute his voice identification, and did not properly object at trial.   These conclusionary and speculative

allegations do not undermine the overwhelming evidence that proved that Mejia was not just a member of a drug trafficking conspiracy, but a leader within it.

In light of this, there is no reasonable probability that, even if Mejia's trial counsel's performance was deficient, as he alleges, the outcome of his trial would have been any different. Because Mejia cannot show the requisite prejudice under *Strickland*, his ineffectiveness claims should be dismissed.

**B.**     **Mejia's Claims of Ineffective Assistance of Counsel are Legally and Factually Incorrect and Not So Serious as to Warrant Habeas Relief**

Looking at the somewhat unclear claims themselves, Mejia has failed to demonstrate that any of the allegations warrant habeas relief for ineffective assistance of counsel.   In fact, many of the claims alleged are factually and legally incorrect.

Mejia argues that the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate" and the right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. He relies on the Supreme Court's decision in *United States v. Cronic,* 466 U.S. 648 (1984), in which the Court held that where counsel is absent from the proceedings or prevented from assisting the accused at a critical stage, where counsel's presence is so useless that the defendant is for all intents and purposes without a lawyer, or where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," then courts evaluating the defendant's ineffective assistance claim may presume that a competent lawyer could have achieved a different result at trial and no specific showing of prejudice is required. *Id.* at 658–59; *see also Mickens v. Taylor,* 535 U.S. 162, 166

10

(2002). Stated differently, courts can have no confidence in the outcome of a trial when counsel completely abandons the needs of his client, regardless of the evidence against the accused. When that occurs, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. *Id.* at 166.

This is not the case with Ms. Shaner and Mr. Virgilio's performance as a defense team. Whatever the deficiencies in their representation of Mejia, they were not as dramatic as to be tantamount to Mejia enjoying no representation at all. *See United States v. Thompson,* 27 F.3d 671, 676 (1994) (*Cronic* exception reserved for "a very narrow spectrum of cases"). *United States v. Ramsey*, 323 F. Supp. 2d 27 (2004). The trial record shows that Mejia's trial team engaged in a very aggressive motion practice on behalf of the defendant, and they cross-examined witnesses. Furthermore, Ms. Shaner delivered a reasonably well-crafted closing argument that properly focused on the credibility of all the witnesses, the Government's evidence and its burden of proof.

Mejia alleges that his Sixth Amendment right to the effective assistance of counsel has been violated. As part of Ground One of his claim of ineffective assistance of counsel, Mejia points as supporting facts that this was Ms. Shaner's first international case (fact 1), that she did not consult with other advisors to understand the gravity of the charge (fact 2) nor did she understand the complexity of possible defenses including voice analysis techniques or handling international experts and probes (fact 3) and that she failed to interview and call certain witnesses (fact 4).

11

1.      **Alleged Inexperience of Mejia's Counsel**

An ineffective assistance claim must be premised on errors by counsel that prejudice the defendant. *Strickland v. Washington*, 466 U.S. at 687 (1984).   It is not based on counsel's lack of experience.   *See McClesky v Zant*, 499 US 467 (1991).   Mejia's initial claim of ineffective assistance of counsel does not point to any actual error made by Ms. Shaner (See Attachment A); it is based on the claim that she was simply inexperienced in handling such matters. The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such evaluation. *United States v. Cronic*, 466 U.S. 648, 666 (1984).   Thus, because Mejia's conclusionary claims are based on counsel's lack of experience and not on counsel's errors in representing him, such claims are groundless.

2.      **Mejia's Counsel's Alleged Failure to Call Witnesses in His Defense**

In Ground One (fact 4) and Ground Two of his claim, Mejia also points to his counsel's failure to locate and call witnesses in his defense.   Mejia seemingly suggests that his counsel failed to call or locate certain witnesses or evidence in his defense who would have presumably testified favorably in his defense.

Mejia's claim that Ms. Shaner did not properly understand his defenses or find favorable witnesses is also baseless.   It has been frequently held that complaints that counsel was ineffective for failing to call witnesses are disfavored because the decision to present evidence is one of trial strategy.   See *United States v. Cockrell*, 720 F.2d 1423, 1427 (1983).   Moreover "a conscious and informed decision on trial tactics and strategy cannot be the basis for

12

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (1983)). At the same time, the decision of which witness(es) to call at trial turns "upon tactical considerations of the moment and larger strategic plan for trial." *United States v. Henry*, 821 F.Supp.2d 249, 255 (2011)(quoting *Gonzalez v. United States*, 553 U.S. 242 (2008)). Further, Mejia has not shown which witnesses could have been brought from Panama and Colombia, nor what would be the proffered testimony of Customs Agents Pat Fisher and Shad Berard, DEA agents Dan Mahoney and Matt Carbone, and Juan Delgado's best friend Charles Harrison. He has also failed to show that their testimony would have had a likely impact upon the outcome of his case, given the totality of the evidence against him. *United States v. Homes Valencia-Rios*, 639 F. Supp.2d 98, 107 (2009).

Mejia fails to articulate with any specificity what these purported defense witnesses would have testified to. Nor does Mejia proffer any specific information or affidavits to support his claim. *Strickland* demands much more. Ambiguous and conclusory allegations of this sort cannot satisfy a claim that counsel's representation fell below an "objective standard of reasonableness." *See United States v. James*, 737 F. Supp. 2d 1, 7 (2010) (finding that defendant's allegations of ineffective assistance claim failed because his claims were "vague, conclusory, and palpably incredible.")

Where there is a failure to investigate a witness or other evidence that may satisfy the deficient performance of counsel prong, the defendant must still show how counsel's failure to investigate prejudiced the outcome of his case before a court can conclude that counsel's performance resulted in ineffective assistance of counsel. *United States v. Debango,* 780 F.2d 81,

85 (1986). Thus, in a successful claim of counsel's failure to investigate, a defendant must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result."... Courts should insist that the defendant show to the extent possible precisely what information would have been discovered through further investigation. *United States v. Askew,* 88 F.3d 1073 (1996) (quoting *Sullivan v. Fairman,* 819 F.2d 1382, 1392 (1987)); *see United States v. Gwyn,* 481 F.3d 855 ("[A] defendant may not merely allege that counsel failed to undertake an investigation."). For example, in *United States v. Moore,* 104 F.3d 377 (1997), the defendant argued that his counsel was ineffective because he failed to subpoena witnesses who allegedly would have established the defendant's innocence. *Id.* at 391. "In rejecting his claim, the court noted that the alleged testimony of witnesses not subpoenaed 'was tangential at best' and the evidence supporting the defendant's guilt was so strong as to render any error by defense counsel harmless." *Id.*   *United States v. Valencia-Rios*, 639 F. Supp. 2d 98, 104-05 (2009) aff'd, 391 F. App'x 885 (2010). Therefore, Mejia's claim must fail, as there is no clear evidence of the existence of any error, let alone one that would undermine the overwhelming evidence of his guilt.

### 3.   Alleged Failure to Challenge the Voice Identification

In Ground Three, Mejia also contends that his counsel was ineffective for not undermining his voice identification.  It appears he claims this identification could have been challenged by an expert, hearing all of the 130 wiretap tapes, and his testimony in which they could compare his voice.   This claim is unsupported by the law and the facts of this case.

First, it is not clear that voice identification expert testimony is admissible in this jurisdiction, let alone that any expert would conclude Mejia was not captured on the recordings. *See United States v. Simmons*, 431 F. Supp.2d 38, 45 (2006).   Moreover, Mejia's voice was identified on the recorded conversations by Special Agent Evans, Investigator Sanchez, and cooperating witness Juan Delgado, a prisoner who met Mejia during his pretrial incarceration and was familiar with the tone and timber of the defendant's voice. Indeed, in *Ruiz v. United States*, 447 F.Supp.2d 921, 928 (2006), the defendant similarly alleged that his attorney should have consulted with "various experts in voiceprint identification and handwriting and fingerprint analysis."   The *Ruiz* court rejected the claim, noting that "[t]hese unsupported speculations, without significantly more detail as to the  nature of what this expert testimony would have revealed, are insufficient to establish that Ruiz's counsel was ineffective." *Id.* at 927.    In this case, Mejia confusingly alleges that had the jury listened to all 130 wiretap recordings, the large majority of which do not capture Mejia's voice, they would somehow believe he was not on the recordings. Furthermore, evidence of Mejia's guilt did not consist solely on the wiretap recordings; his guilt was also conclusively proven by his two separate confessions to law enforcement and to Delgado.

As to Mejia's contention that, had he testified at trial, the jury could have determined for themselves that his voice was not on the recording, it is speculative.   Mejia cannot use this as an excuse to establish a claim of ineffective assistance, because it was his decision not to testify at trial.   In a voir dire conducted by the Court for both defendants, the judge explained that they have an absolute right to testify at trial and directly addressed Mejia and asked him if he wished to testify.   Mejia stated that it was his choice not to testify.   (Tr.11/08/2001 at p75-p.77) See

Attachment B.[4]   The defendant's own choice in this matter not to testify is not a valid basis for a claim of error on the part of his counsel.

Thus, the defendant has failed to show that there was any actual error made by counsel which would constitute valid grounds for his claim of ineffective assistance of counsel, let along that such an error would have changed the outcome of the trial.

### 4.  <u>Alleged Failure to Fully Brief Mejia on Plea Offers from the Government</u>

In a non-trial related claim (Ground Four), it is very unclear, but Mejia appears to allege that Ms. Shaner failed to sufficiently inform him about a plea offer that Government counsel at the time (Robert Feitel) extended, which called for a sentence of 90 to 120 months.   The prior prosecutor, Mr. Feitel, who is no longer an attorney at the Department of Justice, has informed the undersigned counsel that the only offer he extended to the defendant was via letter dated August 9, 2001. According to that letter, the Government provided an offer in which his Offense Level would be 39 and guideline range was a term of 262 to 327 months.   In that letter, the defendant was informed that the Government was seeking an upward adjustment to his sentence based upon the fact that the defendant exercised management responsibility within the criminal organization. Although there is no letter formally rejecting the plea offer, Ms. Shaner communicated the offer to Mejia but made clear to Mr. Feitel that the defendant was not interested in pleading guilty. As to any other offer from the Government, a potential offer of eight years was discussed between Carl Eurenius (Mr. Feitel's predecessor) and Ms. Shaner, who later discussed it with Mr. Mejia. However, Mejia expressed that he did not want to plead or

---

[3] There is a typo on the trial transcript on page 76, lines 14 and 15: "The Court: And is it your choice not to testify or not to testify?". It is the Government's position that it was the intent of the court to phrase the question as "And is it your choice to testify or not to testify?", to which the defendant replied "No, not to testify".

cooperate. The Government has not found any evidence of any such offer in its file. Nonetheless, Ms. Shaner has made it clear that Mejia rejected not just one but two offers from the Government.   Thus, Mejia's claim is factually baseless.

Nor do the allegations rise to the level of relief mandated under *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) or *Missouri v. Frye*, 132 S. Ct. 1399 (2012).   Those cases stand for the proposition that a defendant who turned down a favorable plea offer based on having received incorrect legal advice from his attorney may maintain a claim for ineffective assistance of counsel.   However, Mejia must show that his counsel gave ineffective advice and but for the ineffective advice there is a reasonable probability that the plea offer would have been accepted and presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment imposed.   *Id.* at 1385.   In this case, there is no allegation or evidence that Ms. Shaner provided Mejia with any ineffective advice.   He was informed of the plea offers, he was aware of the consequences or rejecting the plea offers, and he voluntarily chose to reject those offers under a belief that he could establish his innocence at trial, namely, that he was not captured on the recordings. Whether such a decision was wise in light of the other strong evidence of his guilt, namely his own admissions and testimony of other coconspirators of his involvement in the drug trafficking organization, is not a proper basis for ineffective assistance of counsel claim nor relief sought herein.

## 5.   Allegations of Errors Reflecting Ineffective Assistance of Counsel

In Ground Five the defendant contends that counsel at trial was confused and disoriented

17

regarding the procedures and documents in this case and points as proof alleged errors cited by

the United States Court of Appeals decision in this case, *United States v. Mejia*, 448 F3d. 436

(2006). However, such allegations and citations are out of context and misconstrued.   Besides,

an error by counsel, even if professionally unreasonable, does not warrant setting aside judgment

in a criminal proceeding if the error had no effect on the judgment. *Strickland v. Washington*, 466

U.S. 668 (1984). For example, while Ms. Shaner may not have made many contemporaneous

objections as to the testimony of Inspector Sanchez, the Court of Appeals points out that "On

most occasions upon which the defense did raise such objections, the district court properly

sustained them; when the court overruled an objection, any error was harmless in light of Agent

Garland's properly admitted testimony on the same point. Moreover, at the close of the

testimony, the court entertained a motion to strike Inspector Sanchez's

testimony—notwithstanding the motion's untimeliness–and did in fact strike eight lines of

testimony." *Mejia*, 448 F3d. at 449.

Furthermore, while counsel may not have objected to statements made by Rios, the

Appellate Court nonetheless considered the admissibility of the testimony and rules that "[e]ven

assuming that the admission of the statement was error, it did not rise to the level of plain error.

The prejudicial impact of the statement was indirect: what inference the jury might have drawn

regarding Mejia's guilt from an inference of Rios' fear is speculative at best." *Id* at 450. Any

such prejudice was mitigated by a cautionary instruction that the district court gave to the jury.

Moreover, it was vastly outweighed by the overwhelming evidence of Mejia's guilt.   *Id.*

Lastly, even if Mejia is correct that his defense counsel did not anticipate evidence of his drug trafficking prior to 1998 being presented at trial, it may still not rise to the level of an egregious error.   Ordinarily, unless a convicted prisoner on habeas corpus or 2255 petition successfully alleges misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interests, the defendant in a criminal case is bound by the acts of his counsel. Otherwise the courts will be required to try out the ability and competence of counsel whenever a person was convicted and thereafter complained that his lawyer was incompetent. *Kennedy v. United States*, 259 F.2d 883, 886 (1958).   None of these alleged errors, taken in the context of the trial and the overwhelming evidence of Mejia's guilt, were severe enough to undermine Ms. Shaner's function as counsel as guaranteed by the Sixth Amendment, nor would they have changed the outcome of the trial.

**6.   Mejia alleges that he was convicted with facts different to the indictment**

What we understand from Mejia's allegation in the addendum of his ineffective assistance motion is that he thinks that the evidence presented a trial does not support the allegations of the indictment.   A 2255 petition is an "extraordinary remedy," however, and "will not be allowed to do service for an appeal." *Bousley v. United States,* 523 U.S. 614, 621 (1998). *See also United States v. Johnson,* 988 F.2d 941, 945 (1993) ("Section 2255 ... is not designed to provide criminal defendants multiple opportunities to challenge their sentence."). If a prisoner could have raised a claim on direct appeal but did not do so, he has "procedurally defaulted" on that claim and cannot present it in a 2255 petition unless he shows (1) cause for failing to raise it on direct appeal and "actual prejudice" from that failure or (2) that he is "actually innocent."

*Bousley,* 523 U.S. at 622; see also *United States v. Alvarez-Espinoza*, CV-12-01083-PHX-DGC, 2013 WL 2317657 at 8 (D. Ariz. May 28, 2013).

Similarly, claims that could have been on direct appeal but were not can only be raised under limited circumstances.   As the Supreme Court has explained, section 2255 "may not do service for an appeal," *United States v. Frady*, 456 U.S. 152, 162 (1982). Therefore, a defendant cannot ordinarily raise through a section 2255 motion an argument that could have been raised on appeal.

Mejia does not even allege that counsel failed to raise the issue in the District Court or on direct appeal. Mejia has not shown improper performance by his counsel or prejudice as to any issue.

## C.   The Court Should Deny this Petition without an Evidentiary Hearing

In addition, when a district judge hearing a 28 U.S.C. § 2255 habeas corpus petition is the same judge who presided over the criminal case, the judge may, as a matter of discretion, decline to hold an evidentiary hearing. *See United States v. Morrison,* 98 F.3d 619, 625 (1996); *cert. den.,* 520 U.S. 1131 (1997); *United States v. Fennell*, 53 F.3d 1296, 1304 (1995).   It is appropriate to forgo such a hearing when the record from the defendant's trial clearly shows that the defendant will not receive relief on a claim of ineffective assistance of counsel. *United States v. Morrison,* 98 F.3d 619, 625 (1996). Similarly, summary disposition may be appropriate where, as here, Mejia "failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Thomas*, 541 F. Supp. 2d 18, 23 (2008).

Given the factual and legal failings of Mejia's claims, the Government requests the Court deny

his petition without an evidentiary hearing.

## III. CONCLUSION

As noted, the Government believes that none of the alleged failures constitute a violation

of the Sixth Amendment right to counsel, especially in light of the fact that Mejia was

represented by two attorneys and yet he only alleges ineffectiveness as to one of them.   More

importantly, none of the alleged errors would have resulted in a different outcome at trial.   Mejia

has not shown that (1) counsel's actions were outside the wide range of professionally competent

assistance and (2) that he was prejudiced by reason of his counsel's actions.

For the foregoing reasons, the United States respectfully requests that Mejia's motion be

denied in its entirety and without a hearing.


Respectfully submitted,


Arthur Wyatt, Chief
Narcotics and Dangerous Drug Section


 /s/ Carmen Colón

Carmen Colón
Trial Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
(202) 353-4425

21

CERTIFICATE OF SERVICE


I hereby certify that a copy of the foregoing was sent by ECF to the defendant and Heather Shaner, Esq., this 7th day of June, 2013.


/s/ Carmen Colón